```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                    SOUTH BEND DIVISION
```

CURTIS BURNSIDE,              )
                              )
Petitioner,                   )
                              )
vs.                           )    CAUSE NO. 3:13-CV-661
                              )
SUPERINTENDENT,               )
                              )
Respondent.                   )

## OPINION AND ORDER

This matter is before the Court on a habeas petition challenging a prison disciplinary proceeding, filed by Curtis Burnside, pro se, on July 1, 2013 (DE #1). For the reasons set forth below, the petition (DE #1) is **DENIED**.

BACKGROUND

In WCC # 12-09-0259, Burnside was found guilty of assaulting a staff member. (DE #5-3.) The charge was initiated on September 9, 2012, when Corrections Officer S. Waterman wrote a conduct report stating as follows:

> On today's date 9-9-12 at approx 1130 AM, I Officer Waterman was allowing another offender to exit the holding cell to use the bathroom. At that time Offender Burnside Curtis 881663 yell[ed] fuck this shit and tryed [sic] to exit the holding cell. I Ofc Waterman told Burnside no you not [sic]. He then lunched [sic] the gate of [the] holding cell w[h]ich struck me [in the] back. Then this offender came at me putting both his hand[s] on my upper chest and threw me Ofc. Waterman into the wall.

(DE #13-1.)

On March 6, 2013, Burnside was notified of the charge.[1] (DE #13-2.) He pled not guilty, declined the assistance of a lay advocate, did not request any physical evidence, and requested a witness statement from Dr. B. Eichman, the prison psychiatrist, regarding his "mental capacity" at the time of the incident. (*Id.*) Prior to the hearing, a statement was obtained from Dr. Eichman, who stated as follows: "Since I was not present at the time of this incident there is no way I can attest to this offender's mental status at that time." (DE #13-3.)

On March 11, 2013, a hearing was held on the charge. (DE #13-4.) In his defense, Burnside made the following statement: "I just ran out of the cage---she got in my way [a]nd in the process was knocked to the ground. I went back in the cage once I realized what had happened. I had no control over what happened." (*Id.*) Based on the evidence, the hearing officer found him guilty. (*Id.*) Among other sanctions, Burnside lost earned time credits and received a credit-class demotion. (*Id.*) His administrative appeals were denied. (DE #13-5 to #13-7.)

---

[1] Burnside was found guilty at two separate hearings held in October 2012 and December 2012, but in both instances the guilty findings were vacated on appeal due to procedural errors. (DE #1 at 10-13.) The only facts relevant here pertain to the third hearing occurring in March 2013. Burnside appears to complain that he was tried three times on the same charge, but double jeopardy principles do not apply in the prison disciplinary context. *See Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996).

DISCUSSION

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Burnside raises a number of claims in his petition regarding the failure of prison staff to follow Indiana Department of Correction ("IDOC") policies regarding time deadlines, the sanctions imposed, and the processing of his appeal. (DE #1 at 5-7.) However, even if he is correct, a violation of IDOC rules would not entitle him to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief is only available for a violation of federal law); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal

habeas court "does not sit to correct any errors of state law"). Accordingly, these claims are denied.

Burnside next challenges the sufficiency of the evidence. (DE #1 at 6.) In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The court will overturn a guilty finding only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Additionally, circumstantial evidence alone can be sufficient to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Upon review, there is sufficient evidence in the record to support the guilty finding in this case. Officer Waterman reported that Burnside was in a holding cell,[2] and when she was letting

---

[2] Burnside explains that he was in the holding cell for "disciplinary reasons." (DE #14-1 at 7.)

another inmate out to use the restroom, Burnside yelled "fuck this shit" and tried to push past her. She told him he could not leave, at which point he pushed the gate into her back, and then shoved her in the chest into a wall. This is sufficient evidence to establish that he was guilty of assault. *See Hill*, 472 U.S. at 457 (evidence is sufficient as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report alone provided some evidence to support disciplinary determination).

In the face of this evidence, Burnside does not offer an outright denial, but argues instead that he had no control over what he was doing because he suffers from bi-polar disorder, which makes him moody and "overly aggressive." (DE #1 at 5.) He asserts that he was feeling stressed that day due to the death of his father approximately six months earlier. (DE #14-1 at 7.) He appears to argue that the officer caused the incident by not listening to him when he asked to be let out of the cell. (*Id.*)

Notably, the evidence Burnside requested (the statement from Dr. Eichman) did not support his claim that he could not control his actions on the date in question. Furthermore, even if Burnside was moody or feeling stressed that day, "inmates cannot be permitted to decide which orders they will obey, and when they will

obey them[.]" *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). "When an inmate refuses to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials [which] . . . places the staff and other inmates in danger." *Id.* In other words, Burnside was not entitled to physically assault the officer or disobey her order to stay in the cell even if he was feeling stressed or irritable. Moreover, the hearing officer was aware from other evidence that Burnside had mental health issues, and she nevertheless concluded that he was guilty of assault. It is not the province of this court to reweigh the evidence to make an independent determination of guilt or innocence. The question is solely whether there is some evidence to support the hearing officer's determination, *Hill*, 472 U.S. at 457, and that standard is satisfied.[3] This claim is denied.

Burnside also appears to claim that he was denied evidence. (DE #1 at 5.) A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may

---

[3] Burnside appears to argue that there was insufficient evidence for the hearing officer to require him to pay restitution. (DE #1 at 6.) The question for this court is solely whether there was sufficient evidence to support the determination that Burnside was guilty of assault, and that standard is satisfied. What sanction to impose was a matter of IDOC policy; to the extent Burnside is arguing the policy was not followed, this would not entitle him to federal habeas relief. *Estelle*, 502 U.S. 67-68; *Hester*, 966 F. Supp. at 775.

6

deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless, unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

Here, Burnside requested one witness at screening, Dr. Eichman. (DE #13-2.) A statement was obtained from Dr. Eichman and considered by the hearing officer. (DE #13-3.) There is nothing to reflect that Burnside requested any other evidence when he had the opportunity to do so, and he cannot fault the hearing officer for failing to consider evidence he did not properly

request.[4]  *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). He appears to argue that Dr. Eichman should have given a better statement that included information about his bipolar disorder. However, this was the witness that *he* requested. Simply because his witness did not provide exculpatory evidence as he hoped does not mean his due process rights were violated. Accordingly, this claim is denied.

Next, Burnside asserts that he was denied an impartial decisionmaker. (DE #1 at 6.) In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. Due process prohibits a prison official who was substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the events underlying the charge. *Id.*

---

[4] The record reflects that during the hearing Burnside requested a statement from a "Dr. Hanson," but he did not request this witness at the time of screening. (DE #13-2; DE #13-4.) Regardless, the hearing officer noted that Dr. Hanson was a "temp" and was no longer employed at Westville. (DE #13-4.) Burnside does not offer anything to contradict the hearing officer's determination that Dr. Hanson was unavailable, nor has he explained how a statement from Dr. Hanson would have exculpated him from the charge. Assuming he wanted Dr. Hanson to speak about his mental health issues, as stated above, Burnside was not entitled to assault the officer even if he suffers from a mood disorder.

Burnside does not argue, nor is there any evidence in the record to suggest, that the hearing officer was involved in any way in the events underlying the charge. Instead, he argues that his rights were violated because the screening officer, hearing officer, and other staff involved all knew and worked together. (DE #1 at 6-7.) However, this was not a criminal proceeding, and the fact that staff members knew each other, had prior dealings with Burnside, or even discussed the case would not establish a due process violation. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001); *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). To the extent Burnside believes internal prison policies were violated by staffing serving "dual roles" in the hearing process, as explained, the court is not permitted to grant federal habeas relief based on a violation of prison policy. *Estelle*, 502 U.S. 67-68; *Hester,* 966 F. Supp. at 775. Burnside also appears to argue that the hearing officer was biased because she rejected his proffered defense. (DE #1 at 7.) However, it was the hearing officer's job to weigh the relative credibility of the evidence, and her adverse ruling does not establish impermissible bias. *See Liteky v. United States*, 510 U.S. 540, 555–56 (1994). Accordingly, this claim is denied.

CONCLUSION

For the reasons set forth above, the petition (DE #1) is **DENIED**.

DATED: April 14, 2014            /s/ RUDY LOZANO, Judge
                                 **United States District Court**